UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

6500 Cherrywood Lane
Greenbelt, Maryland 20770
Telephone: (301) 344-3593

July 30, 2019

LETTER TO COUNSEL:

> RE: *Latoya B. v. Andrew M. Saul, Commissioner of Social Security*
> Civil Case No. TJS-18-1785

Dear Counsel:

On June 15, 2018, Plaintiff Latoya B.[1] petitioned this Court to review the Social Security Administration's final decision to deny her claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").[2] (ECF No. 1.) The parties have filed cross-motions for summary judgment. (ECF Nos. 15 & 18.) These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[3] Having considered the submissions of the parties, I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Acting Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). Under that standard, I will grant the Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

In her applications for SSI and DIB, Latoya B. alleged a disability onset date of August 22, 2008. (Tr. 14.) Her applications were denied initially and on reconsideration. (*Id.*) A hearing was held before an Administrative Law Judge ("ALJ") on February 28, 2017, (Tr. 33-90), and the ALJ found that Latoya B. was not disabled under the Social Security Act (Tr. 14-25). The Appeals Council denied Latoya B.'s request for review (Tr. 1-4), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ evaluated Latoya B.'s claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Latoya B. was not engaged in substantial gainful activity and had not been engaged in substantial gainful activity since August 22, 2008, the alleged onset date. (Tr. 16.) At step two, the ALJ found that

---

[1] On October 10, 2018, the Court's bench adopted a local practice of using the first name and last initial of non-government parties in Court-issued opinions in Social Security cases. This practice is designed to shield the sensitive personal information of Social Security claimants from public disclosure.

[2] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. He is, therefore, substituted as Defendant in this matter. *See* Fed. R. Civ. P. 25(d).

[3] This case was originally assigned to Magistrate Judge Stephanie A. Gallagher. On May 31, 2019, the case was reassigned to me.

Latoya B. suffered from the following severe impairments: degenerative disc disease, left knee osteoarthritis, chondromalacia, tendinitis/sprain/strain and prior left knee arthroscopy; right shoulder osteoarthritis; bilateral carpal tunnel syndrome; heel spurs; obesity; diabetes; status post Cesarean sections, left salpingectomy, adhesiolysis and repair of small intestine; status post hysterectomy and right oophorectomy; and status post appendectomy and excision of ovarian cyst. (*Id.*) At step three, the ALJ found Latoya B.'s impairments, separately and in combination, failed to meet or equal in severity any listed impairment as set forth in 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings"). (Tr. 19.) Considering Latoya B.'s impairments, the ALJ determined that she retained the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with standing and walking two hours in an eight-hour workday; can frequently push and pull with the upper extremities bilaterally; operate foot controls with the left foot occasionally and right foot frequently; occasionally climb ramps and stairs, balance, kneel, stoop, crouch and crawl; never climb ladders, ropes or scaffolds; frequently rotate, extend and flex the neck; frequently reach overhead with the right upper extremity; frequently finger, feel and handle with the left hand; no concentrated exposure to extreme cold and heat, wetness, humidity, pulmonary irritants such as fumes, odors, dust, gases and poorly ventilated areas, excessive vibration, hazardous moving machinery and unprotected heights.

(Tr. 20.)

At step four, the ALJ determined that Latoya B. was unable to perform any past relevant work. (Tr. 23.) At step five, relying on the testimony of a vocational expert ("VE"), the ALJ determined that there are jobs that exist in significant numbers in the national economy that Latoya B. can perform, including quality control worker, grading and sorting worker, and bench worker. (Tr. 24.) Therefore, the ALJ found that Latoya B. was not disabled under the Social Security Act. (Tr. 25.)

Latoya B. presents numerous arguments in this appeal, including cursory and unsupported arguments discussed only in footnotes. The Court will address the following arguments in this opinion: (1) the ALJ failed to classify certain of her impairments as severe; (2) the ALJ erroneously concluded that she did not meet certain Listings; (3) the ALJ improperly evaluated her RFC; (4) the ALJ posed an improper hypothetical question to the VE; and (5) the ALJ improperly accepted the VE's answer to the hypothetical. None of Latoya B.'s arguments have merit.

Latoya B. first argues that the ALJ failed to classify several of her impairments as severe impairments at step two of the sequential evaluation process. (ECF No. 15-1 at 11-13.) Specifically, Latoya B. maintains that the ALJ should have classified the following impairments as severe:

> uncontrolled diabetes, diabetic neuropathy and plantar fasciitis, right knee chondromalacia, osteoarthritis and ligamentous impairments, fibromyalgia and osteoporosis, right median and radial nerve neuropathy and nerve palsy, epicondylitis, rheumatoid arthritis, migraines, asthma and respiratory impairments

2

with severe left lung deficit, chronic fatigue and insomnia, hyperlipidemia, coronary artery disease and cardiac arrhythmias, [and] major depression/mood disorder.

(*Id.* at 11.)

Latoya B. argues that, contrary to the ALJ's findings, these conditions are not well-controlled with medication or treatment, and have or could be expected to last for more than one year. (*Id.* at 12.) In support of this contention she cites generally to approximately 750 pages of the record. (*Id.* at 13.) An impairment is considered "severe" if it significantly limits the claimant's ability to do basic work activities. See 20 C.F.R. §§ 404.1522, 416.922. The claimant bears the burden of proving that an impairment is severe. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "[M]ere diagnosis says nothing about the severity of [a] condition." *Corcoran v. Astrue*, No. SKG-08-0913, 2009 WL 3100350, at *15 (D. Md. Sept. 22, 2009). Here, the ALJ adequately considered the relevant impairments at step two. The ALJ made the following findings relevant to Latoya B.'s non-severe impairments: her plantar fasciitis was well-controlled with orthotics, her sleep apnea was better with a properly adjusted CPAP, her asthma was mild, her left elbow epicondylitis did not meet the duration requirement, her hypertension was well-controlled with medication, she had hyperlipidemia but no significant atherosclerosis, she had no more than minimal limitations from her left ovarian cyst removal, her nerve impairments did not meet the duration requirement and otherwise caused no significant work limitations, the evidence was insufficient to establish her fibromyalgia as a medically determinable impairment because the evidence does not contain positive trigger point findings, and her mood disorder and major depressive disorder do not cause more than minimal limitations. (Tr. 17-18.) While she bears the burden of proving the severity of each impairment, Latoya B. cites no specific evidence to suggest or establish that any of those impairments are in fact severe, or impose any work-related limitations. Accordingly, I find no error in the ALJ's evaluation of Latoya B.'s impairments at step two. Moreover, even if there had been some error, it would be harmless. Because Plaintiff made the threshold showing that her other impairments were severe, the ALJ continued with the sequential evaluation process and properly considered all impairments, both severe and non-severe, that significantly impacted Plaintiff's ability to work prior to her date last insured. Any step two error, therefore, does not necessitate remand.

Plaintiff's second argument is that the ALJ erred in not finding that she met the criteria for multiple Listings, including Listing 1.02, 12.04, and 12.05. (ECF No. 15-1 at 13-16.) "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). The claimant bears the burden of demonstrating that her impairment meets or medically equals a listed impairment. *Kellough v. Heckler,* 785 F.2d 1147, 1152 (4th Cir. 1986). Here, the ALJ adequately explained his reasoning for why Plaintiff did not meet all of the criteria for any Listing.

Regarding Listing 1.02, the ALJ discussed the criteria necessary to meeting the Listing and concluded that Latoya B.'s "musculoskeletal impairments do not meet or equal the criteria" of the Listing," as the "objective evidence simply fails to indicate that the claimant has functional loss based on a musculoskeletal impairment." (Tr. 19.) The ALJ adequately explained why Plaintiff did not meet Listing 1.02. To the extent that Latoya B. seeks a reweighing of the evidence, this is not within the purview of this Court. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (noting that the Court's role is to assess whether substantial evidence supports the ALJ's conclusion).

However, even if the ALJ improperly considered whether Latoya B. met any Listing, Plaintiff has not borne her burden to establish that she met any particular Listing. Latoya B. appears to argue that she meets Listing 1.02 because she takes "very strong prescription pain medication . . . multiple times per day." (ECF No. 15-1 at 15.) Otherwise, her arguments for why she meets this Listing are broad and non-specific. She cites to nearly 400 pages of the record (*id.* at 14) but does not explain why any of the evidence that she cites demonstrates that she meets any specific criteria of Listing 1.02. The Court will not scour the record to determine whether Latoya B. meets this Listing just because she has not carried her burden to prove that she meets the Listing.

The same reasoning applies to Latoya B.'s argument regarding Listings 12.04 and 12.06. She argues that the ALJ did not adequately consider her activities of daily living and ignored a "multitude of longitudinal evidence to the contrary showing [higher levels of limitation]." (ECF No. 15-1 at 15-16.) She argues that the ALJ's "erroneous finding" regarding her activities of daily living "likely undercut . . . the application of the mental health impairment listings 12.04 and 12.06." (*Id.* at 16.) But the ALJ discussed Latoya B.s' functional abilities throughout his opinion. It is not the function of this Court to reweigh the evidence. Furthermore, Plaintiff fails to carry her burden to demonstrate that she actually met these Listings. She does not identify the criteria required to meet the Listings or cite to the specific evidence that shows she meets the criteria. This is not an instance where "[i]nconsistent evidence abounds, . . . 'leav[ing the court] to wonder' in such a way that [the court] cannot conduct 'meaningful review.'" *See Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015) (unpublished) (quoting *Mascio*, 780 F.3d at 638); *see also Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. 2016) (unpublished) (per curiam) (remanding the case when the decision of the ALJ was deficient despite the Commissioner's contention that the listing clearly was not met, finding that the claimant's "medical record [was] not so one-sided" that the court could say the listing was not implicated). Accordingly, I find no error at step three.

Latoya B.'s third argument is that the ALJ improperly evaluated her credibility concerning the intensity, persistence, and limiting effects of her symptoms. In determining a claimant's RFC, the ALJ must evaluate the claimant's subjective symptoms using a two-part test. *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); 20 C.F.R. §§ 404.1529(a), 416.929(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). At this second stage, the ALJ must consider all available evidence, including medical history, objective medical evidence, and statements by the claimant. *Id.* To determine the credibility of a claimant's statements, the ALJ "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." SSR 16-3p, 2016 WL 1119029 (S.S.A. March 16, 2016). An ALJ must "articulate which of a claimant's individual statements are credible, rather than whether the claimant is credible as a general matter." *Bostrom v. Colvin*, 134 F. Supp. 3d 952, 960 (D. Md. 2015); *see also Mascio*, 780 F.3d at 640 ("Nowhere, however, does the ALJ explain how he decided which of [the claimant's] statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering [the claimant's] residual functional capacity.").

After careful consideration of the ALJ's decision, I conclude that the ALJ properly evaluated

4

Latoya B.'s statements concerning the intensity, persistence, and limiting effects of her symptoms. The ALJ properly evaluated Latoya B.'s complaints in light of the entire record. Plaintiff disagrees with the ALJ's judgment and provides reasons that the ALJ should have given her subjective statements greater weight. However, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays*, 907 F.2d at 1456. In considering the entire record, and given the evidence outlined above, I find the ALJ's evaluation of Plaintiff's subjective complaints was supported by substantial evidence.

Plaintiff also argues that the ALJ's RFC determination did not include an appropriate function-by-function analysis. (ECF 15-1 at 26-27.) However, the ALJ's analysis of the medical evidence is detailed, clear, and well-supported by citations to the record. (Tr. 21-23.) The ALJ's decision complies with the requirements of *Mascio*, 780 F.3d at 634. This argument is wholly without merit.

Plaintiff next argues that the ALJ did not give the appropriate weight to the opinions of Plaintiff's consulting or examining physicians. (ECF No. 15-1 at 27-29.) In support of her argument that the ALJ improperly gave limited weight to the opinions of Dr. Elder and Dr. Bhatgarner, Plaintiff cites to nearly 600 pages of the record. (*Id.* at 28.) The Court must decline Plaintiff's invitation to search 600 pages of the record for any evidence that might support her argument. The Court concludes that the ALJ's decision as to the weight to be afforded to the opinions of the medical providers in the record is supported by substantial evidence and that the ALJ correctly applied the law regarding the weight to be assigned to medical opinions.

Finally, Plaintiff raises two related arguments regarding the testimony of the VE. (ECF No. 15-1 at 29-35.) First, she argues that the ALJ improperly failed to rely on the VE's testimony given in response to hypothetical questions that included limitations that the ALJ did not find to apply to Latoya B. To the extent that the ALJ received testimony from the VE regarding a hypothetical individual with limitations different from those that the ALJ found to apply to Plaintiff, that testimony would not be relevant to the ALJ's decision. In order for an ALJ to rely upon a VE's opinion, the VE's opinion must be provided "in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989). Here, the ALJ appropriately relied on the VE's opinion that was given in response to the hypothetical that encompassed Plaintiff's limitations. The ALJ was not required to rely on the VE's opinion for hypothetical questions that encompassed limitations that differed from the Plaintiff's.

Second, Plaintiff argues that the ALJ erred by accepting the VE's testimony regarding one of the hypotheticals because the testimony was not consistent with the Dictionary of Occupational Titles ("DOT") and not responsive to the question posed. (ECF No. 15-1 at 32-35.) This argument is also without merit. As discussed above, the ALJ's RFC determination is supported by substantial evidence. The ALJ's hypothetical to the VE adequately reflected Plaintiff's RFC. The ALJ properly relied on the VE's testimony that a hypothetical individual with an RFC matching that of the Plaintiff could perform certain jobs in the sedentary exertional range. This is because an individual capable of performing light work is also capable of doing sedentary work, notwithstanding other limitations. To the extent that the ALJ erred in accepting the VE's testimony that the jobs of Bench Worker and Quality Control Worker could be performed by an individual with Plaintiff's RFC, any such error is harmless. The VE also identified a Grading and Sorting position that could be performed by a person with Plaintiff's RFC. Plaintiff argues that the "job title listed as Grader/Sorter is actually noted to be a 'nut sorter' position

in accordance with the DOT code provided," which is inconsistent with Plaintiff's RFC. (*Id.* at 33.) But Plaintiff provides no citation to any evidence or authority that indicates that this position is actually inconsistent with Plaintiff's RFC (as determined by the ALJ). Because a VE has, "through training and experience in vocational counseling or placement, an up-to-date knowledge of job requirements, occupational characteristics and working conditions, and a familiarity with the personal attributes and skills necessary to function in various jobs," *Wilson v. Califano,* 617 F.2d 1050, 1053 (4th Cir. 1980), an ALJ is permitted to rely upon a VE's testimony as substantial evidence to support a conclusion regarding vocational issues. In light of the express testimony provided by the VE in this case, which has not been shown to be flawed, the ALJ provided substantial evidence in support of the conclusions.

For the reasons set forth herein, Latoya B.'s Motion for Summary Judgment (ECF No. 15) will be **DENIED**, and the Commissioner's Motion for Summary Judgment (ECF No. 18) will be **GRANTED**. The Clerk is directed to **CLOSE** this case. Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Timothy J. Sullivan
United States Magistrate Judge